*132 Justice Alito,
concurring.
The position taken in this ease by the Federal Government — a position that the Court now squarely rejects— would have put the property rights of ordinary Americans entirely at the mercy of Environmental Protection Agency (EPA) employees.
The reach of the Clean Water Act is notoriously unclear. Any piece of land that is wet at least part of the year is in danger of being classified by EPA employees as wetlands covered by the Act, and according to the Federal Government, if property owners begin to construct a home on a lot that the Agency thinks possesses the requisite wetness, the property owners are at the Agency’s mercy. The EPA may issue a compliance order demanding that the owners cease construction, engage in expensive remedial measures, and abandon any use of the property. If the owners do not do the EPA’s bidding, they may be fined up to $75,000 per day ($37,500 for violating the Act and another $37,500 for violating the compliance order). And if the owners want their day in court to show that their lot does not include covered wetlands, well, as a practical matter, that is just too bad. Until the EPA sues them, they are blocked from access to the courts, and the EPA may wait as long as it wants before deciding to sue. By that time, the potential fines may easily have reached the millions. In a Nation that values due process, not to mention private property, such treatment is unthinkable.
The Court’s decision provides a modest measure of relief. At least, property owners like petitioners will have the right to challenge the EPA’s jurisdictional determination under the Administrative Procedure Act. But the combination of the uncertain reach of the Clean Water Act and the draconian penalties imposed for the sort of violations alleged in this case still leaves most property owners with little practical alternative but to dance to the EPA’s tune.
*133 Real relief requires Congress to do what it should have done in the first place: provide a reasonably clear rule regarding the reach of the Clean Water Act. When Congress passed the Clean Water Act in 1972, it provided that the Act covers “the waters of the United States.” 33 U. S. C. §1362(7). But Congress did not define what it meant by “the waters of the United States”; the phrase was not a term of art with a known meaning; and the words themselves are hopelessly indeterminate. Unsurprisingly, the EPA and the Army Corps of Engineers interpreted the phrase as an essentially limitless grant of authority. We rejected that boundless view, see Rapanos v. United States, 547 U. S. 715, 732-739 (2006) (plurality opinion); Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers, 531 U. S. 159, 167-174 (2001), but the precise reach of the Act remains unclear. For 40 years, Congress has done nothing to resolve this critical ambiguity, and the EPA has not seen fit to promulgate a rule providing a clear and sufficiently limited definition of the phrase. Instead, the Agency has relied on informal guidance. But far from providing clarity and predictability, the Agency’s latest informal guidance advises property owners that many jurisdictional determinations concerning wetlands can only be made on a case-by-case basis by EPA field staff. See Brief for Competitive Enterprise Institute as Amicus Curiae 7-13.
Allowing aggrieved property owners to sue under the Administrative Procedure Act is better than nothing, but only clarification of the reach of the Clean Water Act can rectify the underlying problem.